## Miller, Appellant, v. York Coated Paper Company.

*Corporations—Liability of directors—Debts—Acts of April 29, 1874, P. L. 73, February 9, 1901, P. L. 3, and April 22, 1905, P. L. 280.*

Since the passage of the Act of February 9, 1901, P. L. 3, a corporation of any kind may lawfully incur or create an indebtedness in any amount "it shall deem necessary" without regard to the amount of its capital stock paid in. The arbitrary relation of a corporation's indebtedness to its capital stock created by the act of April 29, 1874, P. L. 73, has disappeared.

2. The directors of a corporation are not liable for the debts of a corporation contracted in the usual course of corporation business, whether such debts are or are not in the aggregate more than the actual capital stock paid in.

Argued March 9, 1909. Appeal, No. 19, March T., 1909, by plaintiff, from decree of C. P. York Co., Aug. T., 1908, No. 3, In Equity, dismissing bill in equity in case of Frank P. Miller Paper Company v. The York Coated Paper Company and J. Herbert Thomas et al. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Bill in equity to enforce alleged liability of directors for corporate debts. Before WANNER, J.

The opinion of the Superior Court states the case.

*Error assigned* was decree dismissing the bill.

*Henry C. Niles*, with him *Charles A. May* and *George E. Neff*, for appellant.

*Allen C. Wiest*, with him *Frank M. Bortner, J. R. Strawbridge* and *J. W. Gitt, Jr.*, for appellees.

OPINION BY HEAD, J., July 14, 1909:

To the plaintiff's bill the defendants filed a general demurrer. The learned court below, holding that the demurrer should be sustained on either one of two distinct and independent grounds, dismissed the bill and the plaintiff appeals.

The individual defendants were the directors of the York Coated Paper Company, a manufacturing corporation, incorporated in 1904 under the general act of 1874 and its supplements. Clause 6 of sec. 39 of that act, relating to manufacturing companies, provides: "The whole amount of the debts which any such company at any time owes shall not exceed the amount of its capital stock, actually paid in, unless such debt be for unpaid purchase money for lands bought, which debt shall only be a lien upon and be collectible from said land; and in case of any excess the directors, under whose administration it occurs, shall be jointly and severally liable to the extent of such excess for all the debts of the company then existing," etc.

During the incumbency in office of these defendants, the corporation, in the transaction of its ordinary business, incurred current debts which in the aggregate amounted to about $1,500 more than the actual capital stock paid in. The able counsel for appellant earnestly contends that this indebtedness, to the extent of the excess mentioned, was incurred in violation of the clause and section of the act of 1874 quoted, and as a consequence that the defendant directors have become jointly and severally liable to pay the same.

The trial judge dismissed the bill on the grounds (a) that current debts incurred in the transaction of ordinary routine business were not within the prohibition of the act of 1874; (b) even if they were, the Act of February 9, 1901, P. L. 3, removed any legislative barrier that may have theretofore existed, and thereafter a corporation, like an individual, could lawfully borrow such money as its credit would permit. If the second reason be sound, there is no necessity for a discussion of the questions involved in the first.

The first section of the act of 1901 provides: "That the capital stock or indebtedness, or both, of any corporation created by general or special law may, with the consent of the persons or bodies corporate, holding the larger amount in value of its stock, be increased to such an amount in the aggregate of each as it shall deem necessary to accomplish and carry on and enlarge the business and purposes of the corporation." Standard lexicographers advise us that all of a man's "debts" constitute

his "indebtedness;" and conversely, that his "indebtedness" is the aggregate of his "debts collectively."

Let us pass for the moment the evidence to be found in the body of the act which points to the interpretation by the legislature itself of the word " indebtedness " in the enacting section quoted. Following the simplest rule of construction and thus accepting the language of the statute as its words would be generally understood, there is but little room for any other conclusion than that a corporation of any kind may now lawfully incur or create an indebtedness in any amount "it shall deem necessary" without regard to the amount of its capital stock paid in. In other words, the arbitrary relation of a corporation's indebtedness to its capital stock created by the act of 1874 has disappeared.

Looking broadly at the act of 1901, especially in the light furnished by the amending Act of April 22, 1905, P. L. 280, we discover two prominent subjects of legislative consideration, (1) that a corporation, like a natural person, should have the right to lawfully borrow such sums of money as its credit in the financial world would justify; (2) that this right as to indebtedness, other than current or ordinary, could be exercised only after it had been ascertained that the judgment of the officers determining to create the indebtedness reflected the will of the corporation, viz.: the majority of the stock owners.

Were it not for the fourth section of the act, the qualification as to the character of the indebtedness just noted would not be necessary. That section, in our judgment, plainly discloses the legislative intent to make a distinction between current debts, necessarily contracted in the daily routine of the corporate life, and the more fixed and enduring obligations which are intended to be carried through a period of years. The indebtedness of the corporation is thus classified, however, only with relation to the manner in which it may be lawfully created.

As to limitation of the amount of the indebtedness, the distinction does not exist. In the first section the legislature, as we have observed, uses the word " indebtedness," and declares in the plainest terms that there shall be thereafter no legislative limitation of the amount thereof. That such term certainly in-

cludes what we usually call the permanent or fixed debts of a corporation, and that these are now without limitation as to amount, no one will deny. It would seem to be wholly impracticable, if not absurd, to say that whilst the legislature removed the barrier as to this form of indebtedness, it still intended that it should exist as to current debts. But we need not rely upon this to aid our conclusion, for the lawmakers themselves have declared otherwise.

After providing generally the manner in which the assent of the stockholders to the creation of such indebtedness may be ascertained, the act declares in sec. 4: "Nothing in this act contained shall be construed as compelling resort to the process herein provided in the case of indebtedness contracted in the usual course of corporation business." There would have been no necessity to excise from the operation of the act the current debts of the corporation, if these were not embraced within the term " indebtedness " as used in the first section. And further, the meaning of the lawmaker is demonstrated by the fact that the same word " indebtedness " is used in the fourth section where only the current debts are dealt with. The act then expressly repeals "All acts and parts of acts inconsistent with the provisions of this act."

The line of reason indicated in the foregoing suggestions, and strongly presented in the opinion of the learned trial court, seems to us to necessarily lead to the conclusion that since the passage of the act of 1901 the law does not now provide for the personal liability of corporate directors under the circumstances recited in the bill, even if such liability existed down to the date of the enactment last referred to. For this reason the bill was rightfully dismissed.

Decree affirmed.